# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| CYRUS ONE LLC and CYRUSONE, INC. | § | |
| | § | |
| v. | § | Civil Action No. 4:19-CV-00043 |
| | § | Judge Mazzant |
| STUART LEVINSKY and SWITCH, INC. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion for Preliminary Injunction (Dkt. #16). Having considered the motion and the relevant pleadings, the Court finds that the motion should be granted.

## BACKGROUND

Plaintiffs CyrusOne LLC and CyrusOne, Inc. ("CyrusOne") are in the industry of data center colocation operations. CyrusOne designs, builds, and operates data centers, which along with floor space and cooling, offer telecommunications and power connectivity thereby allowing other businesses to rent space to securely house their services and other computing equipment to connect that equipment to the rest of the world. Defendant Stuart Levinsky started employment with CyrusOne in 2011, managing sales and soliciting customers for CyrusOne data centers. He was, for most of his employment, based at a data center in Phoenix, Arizona but he solicited customers to other CyrusOne data centers throughout the country. In 2017, CyrusOne decided to shift its focus to the "cloud" market, and selected Levinsky to lead that effort. Accordingly, Levinsky was promoted to Vice President of Sales for Cloud and Global Accounts and relocated to Seattle, Washington.

As part of his employment with CyrusOne, Levinsky signed several Employment Agreements all containing non-disclosure (the "Non-Disclosure Agreement"), non-competition

(the "Non-Compete Agreement"), and non-solicitation (the "Non-Solicitation Agreement") provisions. The Non-Compete Agreement states:

> Employee recognizes the need of the Company to prevent unfair competition and to protect the Company's legitimate business interests. Therefore, ancillary to the otherwise enforceable agreement set forth in this Agreement, and to avoid the actual or threatened misappropriation of the Information or goodwill, Employee agrees to the restrictive covenants and for a period of one year following Employee's termination or separation (for any reason), Employee will not accept employment or engage in any business activity (whether as a principal, partner, joint venture, agent, employee, salesperson, consultant, independent contractor, director or officer) with a "Competitor" of the Company where such employment would involve Employee:
>
> (i) providing, selling or attempting to sell, or assisting in the sale or attempted sale of, any services or products competitive with or similar to those services or products with which Employee had any involvement, and/or regarding which Employee had any Information, during Employee's employment with the Company during Employee's employment with the Company); or
> (ii) providing or performing services that are similar to any services that Employee provided to or performed for the Company during Employee's employment with the Company.
>
> For Purposes of this provision, a "Competitor" is any business or entity that, at any time during the one[-]year period following Employee's termination or separation, provides or seeks to provide, any products or services similar or related to any products sold or any services provided by the Company. "Competitor" includes, without limitation, any company or business that provides data colocation and related services to businesses or entities.
>
> The restrictions set forth in this paragraph will be limited to the geographic areas (i) where Employee performed services for the Company, (ii) where Employee solicited or served the Company's customers or clients, or (iii) otherwise impacted or influenced by Employee's provision of services to the Company.

(Dkt. #16, Exhibit 2 at p. 6). Lewinsky's last day on CyrusOne's payroll was November 9, 2018.

In October 2018, Defendant Switch, Inc. ("Switch") gave Levinsky an offer of employment. There is a dispute regarding when that offer was accepted, but Levinsky did accept the offer and now works for Switch.

2

Based on this general set of facts, CyrusOne filed suit in the 442nd Judicial District Court, located in Denton County ("the State Court") on January 14, 2019 ("the State Court Suit") (Dkt. #2, Exhibit 1 at p. 1). The State Court granted a temporary restraining order against Levinsky in the State Court Suit,

> enjoining [Levinsky] and his agents, employees, representatives, attorneys, and those in active concert or participation with him:
>
> (a) from providing, selling or attempting to sell, or assisting in the sale or attempted sale of, any services or products competitive with or similar to those services or products with which Levinsky had any involvement, and/or regarding which Levinsky has any CyrusOne Confidential Information, during his employment with CyrusOne (including any products or services being researched or developed by CyrusOne during Levinsky's employment with CyrusOne) anywhere within the United States;
>
> (b) from providing or performing services anywhere within the United States that are similar to any services that Levinsky provided to or performed for [] CyrusOne during his employment;
>
> (c) from continuing with (i) any of the CyrusOne's customers known to Levinsky during his employment with CyrusOne and from which CyrusOne generated revenue during the one-year period proceeding Levinsky's termination or separation for the purpose of doing competitive business, directly or indirectly, through any person or entity, or (ii) any prospective customers known to Levinsky during the one-year period prior to his termination or separation, for the purpose or intention of attempting to sell any of Switch's products or services or attempting to divert business of said customer or prospective customer from Cyrus One to Switch;
>
> (d) from disclosing any Confidential Information regarding CyrusOne, its customers, and its working relationship with its customers to any third party, including to Switch; and
>
> (e) to return to CyrusOne, through delivery to CyrusOne's counsel of record any CyrusOne property in Levinsky's possession, custody, or control and all documents, files, data and electronic transmissions or copies thereof, constituting, containing embodying, or based upon any of CyrusOne's Confidential Information immediately upon notice of the entry of this Order.

(Dkt. #2, Exhibit 1 at pp. 60–61) ("the State Court's TRO"). The State Court entered this order on January 14, 2019 (Dkt. #2, Exhibit 1 at p. 61). On January 17, 2019, Levinsky removed the

case to federal court (Dkt. #1). On January 23, 2019, Levinsky and CyrusOne filed an agreed motion to extend the State Court's TRO until the Court could decide whether to issue a preliminary injunction in this matter (Dkt. #4). The Court granted the motion on January 25, 2019 (Dkt. #5). On February 25, 2019, CyrusOne filed the present motion for preliminary injunction (Dkt. #16). On March 5, 2019, Levinsky filed his response (Dkt. #19). CyrusOne filed its reply on March 11, 2019 (Dkt. #21). Additionally, on March 11, 2019, CyrusOne filed two unopposed motions for leave to file supplemental exhibits (Dkt. #22; Dkt. #23). The Court granted these motions on March 12, 2019 (Dkt. #30; Dkt. #31) deeming the supplemental exhibits filed (Dkt. #24; Dkt. #27). Finally, on March 13, 2019, Levinsky filed his sur-reply (Dkt. #34).

## LEGAL STANDARD

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

CyrusOne asks the Court to enjoin Levinsky in the same manner the State Court temporarily enjoined Levinsky in the State Court's TRO. CyrusOne maintains that it can show all four required elements to obtain a preliminary injunction. Levinsky disagrees. The Court addresses the four elements in turn.

### I. Substantial Likelihood of Success on the Merits

CyrusOne asserts that the facts of this case demonstrate that Levinsky has already breached his Non-Compete Agreement, that he intends to do so in the future, and that CyrusOne has suffered irreparable harm from the breach. Levinsky claims that he has not breached the Non-Compete Agreement and the evidence shows there are no plans to breach the agreement.

Under Texas law, "[t]he elements of a breach of contract claim are: (1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach." *In re Staley,* 320 S.W.3d 490, 499 (Tex. App.—Dallas 2010, no pet.). Although there are several provisions contained in Levinsky's Employment Agreement, Plaintiff only maintains that Levinsky has violated his Non-Compete Agreement.[1] Texas Business and Commerce Code § 15.50 governs the enforceability of non-compete covenants and provides:

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be

---

[1] In footnote two in CyrusOne's reply, it argues that the evidence justifies relief based on the violation of not only the Non-Compete Agreement, but also the Non-Disclosure Agreement and Non-Solicitation Agreement. However, when analyzing the substantial likelihood of success on the merits, CyrusOne only focuses on the Non-Compete Agreement and does not mention the other two agreements. The Court finds this issue is not fully briefed for the Court to consider. *Gleason v. Markel Am. Ins. Co.*, No. 4:17-cv-163, 2018 WL 3819928, at *3 (E.D. Tex. Aug. 10, 2018) (citing *See United States v. Volksen*, 766 F.2d 190, 193 (5th Cir. 1985); *Ragland v. Dallas Cty. Cmty. Coll. Dist.*, No. 3:16-CV-722-L, 2017 WL 1196863, at *5 (N.D. Tex. Mar. 31, 2017); *Kostic v. Tex. A & M Univ. at Commerce*, 11 F. Supp. 3d 699, 735 (N.D. Tex. 2014)) (denying a motion for reconsideration finding that an issue had not properly briefed for the Court to consider), *aff'd by*, 774 F. App'x 203 (5th Cir. July 30, 2019). Moreover, CyrusOne did not raise this issue until his reply. And it is thus untimely. Accordingly, the Court proceeds only on the Non-Compete Agreement.

> restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

For the purposes of this injunction, "Levinsky does not contest the validity of the [Non-Compete] Agreement." (Dkt. #19 at p. 2). Instead, Levinsky challenges the fact that he has breached or likely will breach the Non-Compete Agreement. Thus, the Court will not address the validity of the Non-Compete, but will focus its analysis on whether Levinsky breached the agreement.

Plaintiff argues that it has sufficiently demonstrated that Levinsky breached the Non-Compete Agreement based on the false representations Levinsky made as he was leaving CyrusOne, the plans laid out during Switch's recruitment of Levinsky, and the actions Levinsky took while still employed with CyrusOne and after his departure. The Court looks to each allegation in turn.

According to CyrusOne, Levinsky accepted or communicated some form of acceptance of Switch's October 16, 2018 offer of employment, as early as October 17, 2018. CyrusOne identifies that the following communications occurred that indicated Levinsky accepted employment earlier than Levinsky claims: (1) after receiving his offer of employment from Switch on October 16, 2018, the following day Switch's CEO Rob Roy contacted Levinsky stating that he was "[r]eally excited about what our team can accomplish over the next ten years. Some amazing new tech opportunities are coming. I believe this is going to be a very 'relevant' moment in all our lives!", to which Levinsky responded, "Thank you, Rob; I couldn't agree more. You and Thomas [Morton, Switch's president,] have done everything you promised, now it's my turn. I look forward to joining your team and making a positive impact" (Dkt. #16, Exhibit 1 at p. 103); (2) on October 25, 2018, after informing CyrusOne of his decision to end his employment, a CyrusOne official wrote to Levinsky to attempt to change his mind, Levinsky then forwarded this email to Morton and claimed that despite "daily attempts being made to talk [him] out of [his] decision . . . he

remain[ed] resolute and committed to the plan" (Dkt. #16, Exhibit 1 at p. 130); and (3) on November 11, 2018, board member Kim Sheehy reached out to "congratulate" Levinsky and let him know that "Rob and Thomas are very excited", to which Levinsky responded that he "[c]an't wait to get started on this unbelievable opportunity" (Dkt. #16, Exhibit 1 at p. 107).[2]

Despite communicating acceptance to Switch in October, Plaintiff contends that not only did Levinsky not share this information with CyrusOne, but also Levinsky actively concealed and lied about his next employment opportunity. CyrusOne points to the following communications: (1) as Levinsky sent in his two-week notice on October 17, 2018, he stated that he "intend[ed] to use the next few months to thoughtfully consider [his] next career move and spend time with [his] family" (Dkt. #16, Exhibit 1 at p. 126); and (2) on October 29, 2018, Levinsky wrote to the CyrusOne human resources department to inquire about "insurance options for maintaining coverage while I'm looking for a new gig" (Dkt. #16, Exhibit 1 at p. 132).[3] CyrusOne maintains that the Court may consider this dishonesty as evidence of guilt. (Dkt. #16 at p. 15-16) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000)).

As an initial matter, Levinsky contends that he did not accept the offer of employment from Switch until he signed the offer letter on December 21, 2018 and thus, he was not dishonest when he communicated with CyrusOne. However, with the evidence before the Court, the Court finds that Plaintiff suggested a substantial likelihood that Levinsky accepted the offer of employment as

---

[2] CyrusOne also points to an email between Levinsky and someone in Switch's human resources department that was discussed during Levinsky's deposition and was an exhibit during the deposition, but that exhibit was not attached to the motion for preliminary injunction or the supplements. Therefore, the Court does not consider this exchange.
[3] CyrusOne claims that Levinsky's first official day with Switch was January 2, 2019 and he finally disclosed where he was working to CyrusOne on January 11, 2019.

7

early as October 17, 2018.[4] Therefore, his communications in October were, at the very least, misleading.

Levinsky additionally contends that *Reeves* is inapposite because it is an employment discrimination case and, therefore the holding does not apply in this breach of contract case. However, the Supreme Court of the United States in *Reeves* explained:

> In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. *Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." Wright v. West*, 505 U.S. 277, 296, 112 S. Ct. 2482, 120 L.Ed.2d 225 (1992); *see also Wilson v. United States*, 162 U.S. 613, 620-21, 16 S. Ct. 895, 40 L.Ed. 1090 (1896); 2 J. Wigmore, Evidence § 278(2), p. 133 (J. Chadbourn rev. 1979).

*Reeves*, 530 U.S. at 147 (emphasis added). The Supreme Court acknowledged that this is a general evidence principle that it then chose to apply in an employment discrimination case. *See id.* Additionally, the Supreme Court cited cases outside the employment discrimination context, demonstrating that this principle is not limited to employment discrimination. *See id.* (citing *Wright*, 505 U.S. at 296; *see also Wilson*, 162 U.S. at 620-21). Finally, while *Reeves*'s progeny is generally related to employment discrimination, it has been used outside that context, as *Reeves* merely states a general evidence principle. *See, e.g.*, *In re Green Field Energy Servs., Inc.*, No. 13-12783(KG), 2018 WL 6191949, at *107 (Bankr. D. Del. Nov. 28, 2018) (using the general evidence principle in deciding an issue regarding a constructive trust).

Thus, Levinsky's argument that he was an at-will employee, had no contractual or common law duty to inform CyrusOne where he was going, and that he did not disclose because he was concerned CyrusOne would file suit fall flat. While he had no obligation to disclose the

---

[4] The Court acknowledges that Levinsky testified in his deposition that it was still "up in the air" whether he would join Switch until he signed the offer letter on December 21, 2018; however, the Court finds that the overwhelming evidence suggests otherwise.

information, the Court is still permitted to infer guilt—that Levinsky had an intent to violate his Non-Compete Agreement—from the fact that Levinsky concealed the truth regarding his next employment move.

This inference of Levinsky's intent to violate the Non-Compete Agreement is further supported by the facts of the case. Plainitff provided evidence to show an intent to compete by working in colocation: (1) during the recruitment process, Switch's CEO, Rob Roy, took Levinsky to tour a data center colocation facility in Reno (Dkt. #16, Exhibit 1 at p. 101);[5] and (2) Levinsky also met with Jennie Karnes, with CBRE, which had "some relationship" with Switch "for futures in Atlanta." (Dkt. #16 at 192:4-7; Dkt. #16, Exhibit 1 at p. 113).

Plaintiff additionally provided evidence that Levinsky has plans to complete in the sales industry: (1) Switch was looking to grow its sales force in 2019 (Dkt. #27, Exhibit 1 at p. 2); (2) Levinsky also indicated to Roy that it was important that "whatever I build with you regarding a sales team should fit smoothly within your corporate culture" (Dkt. #16, Exhibit 1 at p. 101); (3) Levinsky encouraged Cyrus One to use his "crazy sales management skills" as their "primary criteria" to hire him for the open position (Dkt. #16, Exhibit 1 at p. 113); and (4) Switch's president Thomas Morton and Levinsky discussed creating "an overall package" for compensation using a "target commission number" as a component of the package (Dkt. #16, Exhibit at p. 124).

Plaintiff also provided evidence suggesting that there were plans for Levinsky to compete in the "cloud" space: Roy expressed an interest in working with Levinsky "as we bring the unique tools of Switch to the unserved enterprise cloud arena." (Dkt. #16, Exhibit 1 at p. 101).

---

[5] CyrusOne maintains that Levinsky toured another colocation facility; however, the exhibit cited to support this information is a text exchange that gives Levinsky an address, but the text does not explain what the address is and the Court cannot infer that this is a colocation center. (Dkt. #16, Exhibit 1 at pp. 109–11).

Finally, to further support the fact that the position Switch hired Levinsky for was intended to compete in the same field or services he provided to CyrusOne, Switch was also considering another chief sales officer from an interconnection and data center colocation company who managed cloud customers for the position that Levinsky was ultimately hired for. (Dkt. #16, Exhibit 1 at p. 112; Dkt. #16, Exhibit 2 at p. 36). The Court finds that Plainitff has shown a substantial likelihood that the intention during recruitment was for Levinsky to compete in the same space that he worked while employed with CyrusOne.

Moreover, not only do the facts show an intent to violate the Non-Compete Agreement, CyrusOne demonstrated that the facts show that Levinsky took actions to violate and steps toward violating the Non-Compete Agreement: (1) on November 6, 2018, Levinsky offered to give Missy Young, Switch's CIO, ideas "about marketing events" (Dkt. #16, Exhibit 1 at p. 116); (2) Levinsky testified that Morton asked Levinsky's "opinion on a situation he had with the CBRE landlord side of the house", which is on the "datacenter side of the house" (Dkt. #16 at 191:10-192:7); and (3) further, Levinsky was a required attendee and presented at a Switch colocation customer meeting on January 7, 2019, presenting on "[e]xternal network connectivity ([t]ransport and internet service requirements, timeframes and action items)" (Dkt. #24).[6]

Levinsky argues that regardless of the plans and the recruitment process, he now does not work in the colocation field or sales in any manner and that is because Levinsky and CyrusOne hired attorneys to ensure they would not be violating the Non-Compete Agreement. However, this is belied by this previously mentioned January 7, 2019 colocation meeting. The Court finds that

---

[6] CyrusOne also claims that Levinsky kept his laptop after his employment ended with CyrusOne, after he officially started with Switch, and he also connected a USB drive in December 2018. This evidence does not support a claim for breach of his Non-Compete Agreement, and as previously decided the Court only analyzes breach of the Non-Compete Agreement for purposes of this injunction as CyrusOne did not timely ask for or fully brief an injunction based on breach of his Non-Disclosure Agreement.

all plans and actions up until the TRO was entered in this case, on January 14, 2019 indicate that Levinsky would be in colocation sales,[7] and the fact that he does not operate in that field, after being ordered not to do so, does not indicate that he will not immediately move to that space once there are no Court ordered protections in place.

Regardless of all these actions, Levinsky maintains that where he is located falls outside of the geographic range listed in the Non-Compete Agreement. "Generally, a reasonable area for purposes of a covenant not to compete is considered to be the territory in which the employee worked while in the employment of his employer." *Curtis v. Ziff Energy Grp., Ltd.*, 12 S.W.3d 114, 119 (Tex. App.—Houston [14th Dist.] 2000), (finding that based on the employee's "job description and responsibilities, it was reasonable to restrict [him] from working in other oil and gas consulting firms in North America for a six month period, and it did not impose an unnecessary restraint.").

Here, the Non-Compete is limited to areas "(i) where Employee performed services for the Company, (ii) where Employee solicited or served the Company's customers or clients, or (iii) otherwise impacted or influenced by Employee's provision of services to the Company." (Dkt. #16, Exhibit 2 at p. 6). Levinsky described his role at CyrusOne as being the "regional sales manager" for "the West", which as defined by CyrusOne and agreed by Levinsky, means "west of the Rock[y Mountains]." (Dkt. #16, Exhibit 1 at 18:1–11). This would be where Levinsky performed services for CyrusOne. Las Vegas, Nevada is located west of the Rocky Mountains,

---

[7] CyrusOne additionally attempts to argue that Levinsky is breaching his Non-Compete agreement by working in product management and development of sustainable power and related connectivity for SwitchedON, Switch's regulated wholesale power division. This argument was raised late, the reply is reserved to address issues raised in the response, and this was available to be argued in the motion and CyrusOne failed to make this argument. LOCAL RULE CV-7(f). Moreover, CyrusOne did not meet its burden to show that this would fall within the Non-Compete Agreement. Thus, the Court does not find this is a basis for granting the preliminary injunction.

and thus would be in the area that Levinsky performed services and is included in the geographic region of the Non-Compete Agreement.

Accordingly, the Court finds that CyrusOne has demonstrated a substantial likelihood of success on the merits against Levinsky on its breach of contract claim for violating the Non-Compete Agreement.

## II. Substantial threat of Irreparable Harm

Plaintiffs must demonstrate they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[H]arm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey*, 647 F.3d at 600. However, "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Id.* An injunction is appropriate only if the anticipated injury is imminent and not speculative. *Winter*, 555 U.S. at 22.

CyrusOne's injury from Levinsky's likely breach and likely future breach of the Non-Compete Agreement "is inherently irreparable." *RealPage, Inc. v. Enter. Risk Control, LLC*, 4:16-cv-737, 2017 WL 3313729, at *13 (E.D. Tex. Aug. 3, 2017) (quoting *Traders Int'l, Ltd. v. Sheuermann*, No. H-06-1632, 2006 WL 2521336, at *9 (S.D. Tex. Aug. 30, 2006)). "The purpose of a noncompete is to protect the employer's valuable asset for a reasonable period." *Id.* Here, CyrusOne bargained for a one-year period in which Levinsky would not operate in the same or similar space completing the same or similar functions for the same or similar clients. Instead, Levinsky was recruited to perform the same job in the same space while he was still employed with CyrusOne. Levinsky left and began his employment with Switch. Levinsky had the full year left on his Non-Compete Agreement when he began with Switch, beginning in a similar role performing similar functions he performed with CyrusOne, but changing roles only after the State

Court entered the State Court's TRO. Money damages cannot adequately account for the advantage CyrusOne could lose or has already lost by Levinsky violating his Non-Compete Agreement.

### III. Balance of Hardships

When deciding whether to grant an injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). In other words, this element "involves an evaluation of the severity of the impact on defendant should the temporary injunction be granted and the hardship that would occur to plaintiff if the injunction should be denied." 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 2948.2 (3d ed. 2018). As the Court indicated, CyrusOne is likely to suffer irreparable harm without the Court entering a preliminary injunction. On the other hand, the Court finds that enforcing a Non-Compete Agreement that Levinsky agreed to would not cause substantial harm. Thus, the Court finds that the equities favor an injunction to enforce the Non-Compete Agreement the parties agreed to.

### IV. Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger*, 465 U.S. at 312). This factor overlaps substantially with the balance-of-hardships requirement. *Id.* The Court finds that the public interest is served by enforcing contracts entered into by the parties.[8]

---

[8] Federal Rule of Civil Procedure 65(c) provides that the Court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Court will apply the $5,000 bond posted for the State Court's TRO and accepts it as the bond in place for this preliminary injunction.

## CONCLUSION

It is therefore **ORDERED** Plaintiffs' Motion for Preliminary Injunction (Dkt. #16) is hereby **GRANTED**. Accordingly, Levinsky and his agents, employees, representatives, attorneys, and those in active concert or participation with him are hereby **ENJOINED** until the date of **November 9, 2019**:

(a) from providing, selling or attempting to sell, or assisting in the sale or attempted sale of, any services or products competitive with or similar to those services or products with which Levinsky had any involvement, and/or regarding which Levinsky has any CyrusOne Confidential Information, during his employment with CyrusOne (including any products or services being researched or developed by CyrusOne during Levinsky's employment with CyrusOne) anywhere within the United States; and

(b) from providing or performing services anywhere within the United states that are similar to any services that Levinsky provided to or performed for the CyrusOne during his employment.

**SIGNED this 11th day of September, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE